# ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/20/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**XEROX STATE & LOCAL SOLUTIONS, INC.
f/k/a ACS STATE & LOCAL SOLUTIONS,
INC.,**

                   Plaintiff,

          - against -

**XCHANGING SOLUTIONS (USA), INC.
f/k/a ALBION, INC. and XCHANGING
SOLUTIONS LIMITED f/k/a CAMBRIDGE
SOLUTIONS LIMITED,**

                 Defendants.

13 Civ. 3472 (LLS)

**OPINION & ORDER**

Plaintiff Xerox State & Local Solutions, Inc.'s ("Xerox")[1]
amended complaint seeks indemnification from defendants
Xchanging Solutions (USA), Inc. ("Xchanging USA")[2] and Xchanging
Solutions Limited ("Xchanging Ltd.")[3] (collectively "Xchanging")
for losses resulting from Xchanging's breach of representations
and warranties.

Xchanging moves for summary judgment to dismiss Xerox's
claim as time barred. For the reasons that follow, the motion is
granted.

## BACKGROUND

Xerox is incorporated in New York. Dkt. No. 59 ¶ B.1, Exh.
1. Its principal place of business is in Dallas, Texas. Dkt. No.
56 Exh. A9. Xchanging and Xerox entered into an Asset Purchase

---

[1] Formerly known as ACS State & Local Solutions, Inc.
[2] Formerly known as Albion, Inc.
[3] Formerly known as Cambridge Solutions Limited.

Agreement ("APA") dated January 22, 2007, and an amendment dated April 25, 2007. Dkt. No. 56 ¶ 1, Exh. A1 at 2, 244. Through the APA Xerox purchased Xchanging's rights and obligations under a contract with the Tennessee Department of Human Services ("Tennessee Contract") to design and construct a computer software application referred to as the Vision Integration Platform ("VIP"). Id. ¶ 3. The APA provides that it is to be "governed by, and construed in accordance with, the laws of the State of New York." Id. ¶ 2, Exh. A1 at 68.

In a Disclosure Schedule attached to the APA, Xchanging provided a description of the VIP's status and progress and estimated, among other things, the project end date to be in May 2009, and future cost to be incurred $14,086,931. Id. ¶ 4, Exh. A1 at 226. Xchanging's Closing Month Financial Baseline, attached to the amendment, provided an updated description of the VIP's status and progress and estimated the project end date to be in December 2009, and future cost to be incurred $14,221,587. Id. Exh. A1 at 277-78. The APA represented that the information in the Disclosure Schedule and in the Closing Month Financial Baseline was "accurate and complete." Id. ¶¶ 4-5, Ex. A1 at 37. Additionally, in a Bring Down Certificate dated April 25, 2007, Xchanging certified that the representations and warranties made in the APA continued to be "true and correct." Dkt. No. 59 ¶ B.5, Exh. 2. The representations and warranties

were to survive the closing and expire on the thirtieth day
after the applicable statute of limitation. Dkt. No. 56 ¶¶ 12-
14, Exh. A1 at 60, 17, 11.

According to Xerox, the parties agreed to a final purchase
price on October 9, 2007 in the sum of $30,866,333. Dkt. No. 59
¶ B.9, Exh. 3. Xerox claims that it relied on the
representations and warranties in the APA and in the Bring Down
Certificate in agreeing to the price it paid for the Tennessee
Contract. Amend. Compl. (Dkt. No. 18) ¶¶ 30-31.

Xerox alleges that as of July 15, 2013, the project was
still not completed and that Xerox's total expenditure on the
VIP was nearly $100,000,000. Id. ¶¶ 39-40.

In the APA, Xchanging agreed to indemnify Xerox for any
loss, regardless of whether or not such loss related to third
party claims, arising out of or resulting from any breach or
inaccuracy of the representations in the Disclosure Schedule or
the Closing Month Financial Baseline. Dkt. No. 56 ¶ 15, Exh. A1
at 61. Indemnification under the APA is the sole and exclusive
remedy for any breach of the representations and warranties made
in the APA. Id. ¶ 16, Exh. A1 at 63.

On May 22, 2013, Xerox commenced this action by filing a
two-count complaint against Xchanging for indemnification and
breach of contract. Dkt. No. 1. On July 15, 2013, Xerox amended
its complaint, alleging only one count for indemnification

-3-

(thereby mooting Xchanging USA's then pending partial motion to dismiss the breach of contract count). Dkt. No. 18.

The amended complaint alleges that the information in the Disclosure Schedule and in the Closing Month Financial Baseline was neither accurate nor complete, and that Xchanging is, therefore, in breach of the representations and warranties it made in the APA and in the Bring Down Certificate. Id. ¶¶ 43, 50. It alleges that Xerox is entitled to indemnity from Xchanging for losses it incurred as a result of Xchanging's breach in the form of "the difference between the value of the Tennessee Contract as warranted and represented, and the value of the Tennessee Contract as delivered." Id. ¶ 55.

At the time this motion was served, discovery had been ongoing for approximately two and a half years, which involved considerable expense. Dkt. No. 59 ¶¶ B.13-26.

In its Motion for Summary Judgment Xchanging makes two arguments: (1) Under New York's borrowing statute, Xerox's claim is time barred by Texas's four year statute of limitation, and (2) even if subject to New York's longer six year limitation period, the claim is still time barred because it was filed after the six year limitation period expired.

## DISCUSSION

### Jurisdiction

Jurisdiction exists pursuant to 28 U.S.C. § 1332 because

-4-

the parties are diverse and the amount in controversy exceeds
$75,000 exclusive of interest and costs. Amend. Compl. ¶ 11.

## Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a). "An issue of fact is genuine if the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party. A fact is material if it might affect the outcome of the
suit under the governing law." WWBITV, Inc. v. Vill. of Rouses
Point, 589 F.3d 46, 49 (2d Cir. 2009). "In looking at the
record, we construe the evidence in the light most favorable to
the nonmoving party and draw all inferences and resolve all
ambiguities in favor of the nonmoving party." Dalberth v. Xerox
Corp., 766 F.3d 172, 182 (2d Cir. 2014).

## Choice of Law

"A federal court sitting in diversity jurisdiction will, of
course, apply the law of the forum state on outcome
determinative issues." Bank of N.Y. v. Amoco Oil Co., 35 F.3d
643, 650 (2d Cir. 1994), citing Erie R.R. Co. v. Tompkins, 304
U.S. 64, 80, 58 S. Ct. 817, 823 (1938); 28 U.S.C. § 1652.
"Because this action was filed in a district court within the
State of New York, we will apply New York's substantive law."
Schiavone Constr. Co. v. City of New York, 99 F.3d 546, 548 (2d

Cir. 1996).

The APA provides that "This agreement shall be governed by, and construed in accordance with, the laws of the State of New York." Dkt. No. 56 Exh. A1 at 68. New York General Obligations Law § 5-1401(1) provides, in pertinent part:

> The parties to any contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars . . . may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state.

See also Brown Bark III, L.P. v. AGBL Enters., LLC, 85 A.D.3d 699, 700, 924 N.Y.S.2d 571, 573 (2d Dep't 2011) ("Generally, choice-of-law clauses are enforced so long as the chosen law bears a reasonable relationship to the parties or the transaction, and the chosen law does not violate public policy.").

Even if Xchanging's first argument fails, Summary Judgment must still be granted if it prevails on its second argument. The Court, therefore, addresses the second argument first.

### New York General Obligations Law § 17-103(1)

New York General Obligations Law § 17-103(1) provides:

> A promise to waive, to extend, or not to plead the statute of limitation applicable to an action arising out of a contract express or implied in fact or in law, if made after the accrual of the cause of action and made, either with or without consideration, in a writing signed by the promisor or his agent is effective, according to its terms, to prevent interposition of the defense of the statute of limitation in an action or proceeding commenced within the time that would be applicable

-6-

> if the cause of action had arisen at the date of the promise,
> or within such shorter time as may be provided in the promise.

In other words, in contract actions, § 17-103(1) "authorizes an agreement 'to waive, to extend, or not to plead the statute of limitation' upon the conditions that the agreement is in writing and signed by the promisor or his agent." Lifset v. W. Pile Co., 85 A.D.2d 855, 856, 446 N.Y.S.2d 487, 489 (3d Dep't 1981).

However, for an agreement that extends the statute of limitation to be valid, § 17-103(1) "requires that the agreement be made after the accrual of the cause of action." Id. New York General Obligations Law § 17-103(3) is clear that

> A promise to waive, to extend, or not to plead the statute of limitation has no effect to extend the time limited by statute for commencement of an action or proceeding for any greater time or in any other manner than that provided in this section, or unless made as provided in this section.

In other words, for an agreement that extends the statute of limitation to be valid it must conform to the requirements of § 17-103(1). "Thus extension agreements made prior to the accrual of the cause of action continue to have 'no effect'". John J. Kassner & Co. v. City of New York, 46 N.Y.2d 544, 551-52, 389 N.E.2d 99, 103, 415 N.Y.S.2d 785, 790 (1979), citing Gen. Oblig. Law § 17-103(3). Therefore, "If the agreement to 'waive' or extend the Statute of Limitations is made at the inception of liability it is unenforceable because a party cannot 'in advance, make a valid promise that a statute founded in public policy shall be inoperative.'" Id. at 551, 389 N.E.2d at 103,

415 N.Y.S.2d at 789, quoting Shapley v. Abbott, 42 N.Y. 443, 452 (1870).

The claim for indemnification is based on the alleged breach by Xchanging of representations and warranties contained in the APA and in the Bring Down Certificate. The statute of limitation in New York for "an action upon a contractual obligation or liability" is six years. N.Y. C.P.L.R. § 213(2). The statute of limitation period is generally "computed from the time the cause of action accrued." N.Y. C.P.L.R. § 203(a); Hahn Auto. Warehouse, Inc. v Am. Zurich Ins. Co., 18 N.Y.3d 765, 770, 967 N.E.2d 1187, 1190, 944 N.Y.S.2d 742, 745 (2012). Contract actions generally accrue at the time of the breach. Id.; ABB Indus. Sys. v. Prime Tech., Inc., 120 F.3d 351, 360 (2d Cir. 1997) ("in New York it is well settled that the statute of limitation for breach of contract begins to run from the day the contract was breached, not from the day the breach was discovered, or should have been discovered").

Where, as here, the cause of action is based on a breach of representations and warranties, "the contract was breached, if at all, on the day it was executed . . . ." Id. "A representation of present fact is either true or false--and the contract therefore performed or breached--if the underlying fact was true or false at the time the representation was made." Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc., 810 F.3d

-8-

861, 866, (2d Cir. 2015).

The APA, along with the attached Disclosure Schedule, was executed on January 22, 2007. Any misrepresentation occurred then. The six year limitation period for that breach expired on January 22, 2013. The amendment to the APA, along with the Closing Month Financial Baseline, as well as the Bring Down Certificate which certified that the representations and warranties in the Disclosure Schedule were "true and accurate," were executed on April 25, 2007, so if they were inaccurate the breach occurred on that day. The six year limitation period for that breach of the amendment or the Bring Down Certificate expired on April 25, 2013.

The parties' agreement that the representations and warranties would be actionable until the thirtieth day after the running of the applicable statute of limitation was originally made on January 22, 2007, and again on April 25, 2007 through the Bring Down Certificate. Because each agreement to extend the limitation period was made when the causes of action accrued, not after they accrued (as § 17-103(1) requires), under the New York statute the thirty-day extension provision is unenforceable. And because Xerox did not commence this action till May 22, 2013, it must be dismissed as time barred.

Xerox's arguments in response are unavailing.

1.

Xerox argues that an agreement to extend the limitation period was made after a cause of action accrued because a cause of action accrued on January 22, 2007 when Xchanging made the representations and warranties in the Disclosure Schedule, and an agreement to extend the limitation period which started then was made on April 25, 2007 when the amendment was executed.

But at best that would give Xerox an additional thirty days from January 22, 2013 to commence an action. The action was commenced on May 22, 2013, three months after the thirty days expired.

2.

Next Xerox argues that as this is a claim for indemnification, in addition to the causes of action that accrued on January 22, 2007 and April 25, 2007, "a further claim accrued when, in October 2007, the parties finally agreed on the pricing of the contract." Opp. (Dkt. No. 57) at 31. Under this argument, Xerox's complaint would be timely because it was filed in May, well before October 2013.

"[I]t is well settled that a cause of action based upon a contract of indemnification does not arise until liability is incurred by way of actual payment." Varo, Inc. v. Alvis PLC, 261 A.D.2d 262, 265, 691 N.Y.S.2d 51, 55 (1st Dep't 1999), quoting Travelers Indem. Co. v LLJV Dev. Corp., 227 A.D.2d 151, 154, 643

-10-

N.Y.S.2d 520, 523 (1st Dep't 1996) (brackets in <u>Varo</u>). This is because the principle of indemnity is that "if another person has been compelled . . . to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him." <u>Raquet v. Braun</u>, 90 N.Y.2d 177, 183, 240, 681 N.E.2d 404, 407, 659 N.Y.S.2d 237 (1997), quoting <u>Oceanic Steam Nav. Co. v Compania Transatlantica Espanola</u>, 134 N.Y. 461, 468, 31 N.E. 987, 989 (1892) (ellipsis in <u>Raquet</u>). When the indemnitee makes the payment to a third party for which the contract (or the common law) gives him indemnity, a claim arises for him to be repaid by the indemnitor.

Here, Xerox incurred no costs or obligations to a third party. The money that Xerox paid as the contract price was not money that it paid on Xchanging's behalf, and no new cause of action against Xchanging accrued to Xerox when it paid that money.

When a claim is for a straightforward breach of contract, calling the claim indemnification "does not alter the commencement date of the limitations period." <u>Lehman Bros. Holdings v. Evergreen Moneysource Mortg. Co.</u>, 793 F. Supp. 2d 1189, 1194 n.2 (W.D. Wash. 2011) (applying New York law).

Xerox cites two cases to support its argument, but they deal with indemnification claims where the covered loss was the result of liability to a third party.

-11-

First, Xerox cites In re Lehman Brothers Holdings Inc., 530 B.R. 601 (Bankr. S.D.N.Y. 2015). In that case, the defendant initiated loans which it then sold to Lehman Brothers pursuant to an agreement that contained numerous representations and warranties. Id. at 604. Lehman Brothers then sold the loans to a third party, Fannie Mae. Id. at 604-05. When Fannie Mae discovered that the loan agreements included false statements it reached a settlement agreement with Lehman Brothers to recover its losses from the bad loans. Id. at 605. Lehman Brothers' indemnification claim against the defendant sought recovery of the money it paid to Fannie Mae, the third party. See id.

Similarly, in Lehman Brothers Holdings Inc. v. Universal American Mortgage Co. the plaintiff sought indemnification for liability it incurred to a third party. In that case, a loan issuer sold loans it had issued to an entity named LLB, which in turn sold the loans to Lehman Brothers, together with its rights and remedies against the loan issuer. See Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC, No. 13 Civ. 0090(PAB)(MJW), 2014 WL 3258409, at *1-2 (D. Colo. July 8, 2014). Lehman Brothers then sold the loans to a third party, Freddie Mac. Id. at *2. Two years later, when Freddie Mac discovered that the loan agreements were in breach of the representations and warranties contained in the purchase agreement, it obtained reimbursement from Lehman Brothers for

-12-

its losses from the bad loans. Id. at *3. Lehman Brothers then sued the loan issuer for indemnification seeking recovery of the liability it incurred to Freddie Mac. Id.

In both Lehman cases the courts held that the indemnification claims accrued when the plaintiffs made the payments to the third parties. In re Lehman Bros. Holdings Inc., 530 B.R. at 613 ("the six-year statute of limitations on LBHI's claim for contractual indemnification did not begin to run until January 22, 2014, the date of the Fannie Mae settlement"); Universal Am. Mortg. Co., 2014 WL 3258409, at *10 ("plaintiff's indemnification claim is not time-barred because it did not accrue until August 7, 2008 when plaintiff made Freddie Mac whole for loan 5128").

Xerox also cites Chrysler First Financial Services Corp. of America v. Chicago Title Insurance Co., 156 Misc. 2d 814, 595 N.Y.S.2d 302 (Sup. Ct. Nassau Cty. 1993), which holds that "a plaintiff suing on a mortgage title insurance policy, similar to a plaintiff in an action on any other indemnity contract . . . is not entitled to indemnification prior to establishing damages." Id. at 820, 595 N.Y.S.2d at 306. In that case, the plaintiff purchased three title insurance policies in connection with second mortgages he took on three properties. Id. at 816-17, 595 N.Y.S.2d at 304. The title insurance policies were all subject to first mortgages, but in amounts that turned out to be

-13-

below the actual outstanding amount of those mortgages. Id. When both the first and second mortgage on the three properties defaulted, the properties were foreclosed on and sold at auction. Id. Because the actual outstanding amount of the first mortgages consumed more than the title insurance company had said, the plaintiff was left with less money than he expected, and he sued the title insurance company for the difference. Id. The court held that under New York insurance law, "title insurance is a contract of indemnity against actual monetary loss or damage," and applied the familiar rule that a claim for such indemnification does not accrue until actual payment establishes damages. Id. at 820, 595 N.Y.S.2d at 306.

Here, however, Xerox did not face liability to a third party as a result of Xchanging's breach of representations and warranties. Rather, it seeks to recover ordinary contract damages (i.e., the difference between the contract value as promised and the contract value as delivered).

Where parties agree to "indemnify" each other for losses incurred by a breach of contract, where those loses do not relate to liability to a third party, the characterization of "indemnification" is no more than an epithet for recovery for breach of contract.

In Germantown Central School District v. Clark, Clark, Millis & Gilson, AIA, 294 A.D.2d 93, 743 N.Y.S.2d 599 (3d Dep't

2002), aff'd, 100 N.Y.2d 202, 791 N.E.2d 398, 761 N.Y.S.2d 141
(2003), the plaintiff contracted with the defendants to remove
asbestos in a building it owned, following which the defendants
certified that the asbestos had been removed. Id. at 94, 743
N.Y.S.2d at 601. Thirteen years later, the plaintiff discovered
asbestos in the building and sued the defendants for damage to
its property due to the asbestos and for the cost to remove the
asbestos. Id. The court held that the claims were time barred
under the statute of limitation, id. at 98-99, 743 N.Y.S.2d at
604-05, and that a claim for indemnification and restitution
would be meritless because the plaintiff did not actually pay
damages to any of the third parties, and therefore, "defendants'
alleged breach of duty to these third parties does not, as it
must, form the basis for plaintiff's indemnification and
restitution claims." Id. at 99, 743 N.Y.S.2d at 605 (emphasis in
original). The court stated that:

> the actual premise of these claims is that defendants breached
> their contractual duty to plaintiff in negligently performing
> their professional services--the very duties underlying
> plaintiff's time-barred tort claims--which patently cannot
> support plaintiff's proposed equitable causes of action.
> Permitting plaintiffs to add these tort claims by recasting them
> in indemnification and restitution language would improperly
> circumvent the statute of limitations' bar on these claims.

Id. (emphasis in original).

The fact that the amended complaint, and the APA, label the
claim as one for "indemnification" does not alter the fact that
it is one for breach of representations and warranties, which

-15-

accrues at the time the representations and warranties are made.

3.

Xerox's third argument is that the Court should "find that by reason of conduct of the party to be charged it is inequitable to permit him to interpose the defense of the statute of limitations." N.Y. Gen. Oblig. Law § 17-103(4)(b). "Our courts have long had the power, both at law and equity, to bar the assertion of the affirmative defense of the Statute of Limitations where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding." Gen. Stencils, Inc. v. Chiappa, 18 N.Y.2d 125, 128, 219 N.E.2d 169, 171, 272 N.Y.S.2d 337, 340 (1966). Equitable estoppel is the "principle that a wrongdoer should not be able to take refuge behind the shield of his own wrong," and is applied when plaintiff's delay in bringing suit is "because of defendant's affirmative wrongdoing and concealment." Id. at 127, 219 N.E.2d at 170, 272 N.Y.S.2d at 339.

That said, it is "fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit." Zumpano v. Quinn, 6 N.Y.3d 666, 674, 849 N.E.2d 926, 929, 816 N.Y.S.2d 703, 706 (2006). Xerox claims that Xchanging's conduct makes it inequitable to allow Xchanging to

-16-

invoke the defense of statute of limitation. Opp. at 32-33.

Xerox first points to the fact that, id. at 32:

> beginning in January of 2007, Xchanging represented and warranted that the APA--including the 30-day statute of limitations extension that it now attacks as illegal and invalid- -"shall constitute, legal, valid and binding obligations . . . enforceable against" Xchanging. APA § 3.0. Xchanging repeated those promises on April 25, 2007 in the APA Amendment, and again in the Bring Down Certificate. These representations and warranties were deemed so important that they would never expire. APA § 1.01.

As a result of this conduct by Xchanging, Xerox claims

that, id. at 32-33:

> Xerox has continuously relied on these representations and warranties--and had no reason to believe that Xchanging would dishonor them--when it commenced this action and diligently prosecuted the case for three years. Had Xerox known that Xchanging was going to affirmatively disclaim its own representations and warranties about the enforceability of the APA and belatedly assert that the 30-day statute of limitations extension was invalid, Xerox would not have needlessly incurred litigation costs associated with prosecuting this action.

The other conduct of Xchanging that Xerox points to is, id.

at 33:

> it [Xchanging] already moved to dismiss on statute of limitations grounds three years ago--and it chose to do so only as to Xerox's claim for breach of contract, not its claim for indemnity, and only on the basis of the New York statute of limitations. (See Xchanging USA Notice of Motion to Dismiss Count II [ECF No. 8]; Xchanging USA Memorandum of Law in Support of Motion to Dismiss Count II [ECF No. 9]). In response, Xerox voluntarily discontinued its breach of contract claim with the filing of its Amended Complaint. Absolutely nothing was mentioned in Xchanging's motion about the General Obligations Law.

However, these actions by Xchanging do not constitute

conduct that would bar it from raising the statute of limitation

as a defense.

-17-

"The elements of estoppel are with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts. The party asserting estoppel must show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position. . . ." Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp., 76 A.D.2d 68, 81-82, 430 N.Y.S.2d 179[, 187] ([4th Dep't] 1980).

Smith v. Smith, 830 F.2d 11, 12 (2d Cir. 1987).

The alleged conduct fails to satisfy the first and third elements with respect to Xchanging because Xerox does not allege that Xchanging, any more than Xerox, knew at the time it executed the APA that the thirty days extension provision was invalid under New York law and falsely misrepresented that it was valid.

Moreover, "The uncommon remedy of equitable estoppel 'is triggered by some conduct on the part of the defendant after the initial wrongdoing . . . .'" Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478, 491, 868 N.E.2d 189, 198, 836 N.Y.S. 2d 509, 518 (2007), quoting Zoe G. v. Frederick F.G., 208 A.D.2d 675, 675-76, 617 N.Y.S.2d 370, 371 (2d Dep't 1994). Here, Xchanging's representation in the APA, that Xerox would be able to commence an action against it for thirty days after the statute of limitation period expires, was concurrent with, and not after, the accrual of the cause of action.

If Xerox's argument were accepted, the exception would swallow the rule. Under § 17-103(3), an agreement to extend the

-18-

statute of limitation made when or before the claim accrues is invalid. If the invalid agreement itself justifies estopping invocation of § 17-103(3), the statute would seldom apply.

The other conduct that Xerox cites is Xchanging's omission to raise the statute of limitation as a defense to Xerox's indemnification claim at the outset of this action. It argues that Xchanging should be estopped to raise the statute of limitation at this juncture, given all the time and money expended by the parties during the past three years. If Xerox is correct, however, Xchanging would be not only equitably estopped from raising the statute of limitation as a defense, it would be barred as waived under Federal Rule of Civil Procedure 8(c)(1). Kropelnicki v. Siegel, 290 F.3d 118, 130 n.7 (2d Cir. 2002) ("The statute of limitations is an affirmative defense that is waived if not raised.").

The short answer is that the statute of limitation defense was pleaded in both defendants' answers. Their fifth affirmative defenses state "Plaintiff's claim is barred in whole or in part by the applicable statute of limitations." Xchanging USA's Amend. Answer to Amend. Compl. (Dkt. No. 35) at 16; Xchanging Ltd.'s Answer to Amend. Compl. (Dkt. No. 31) at 16. While Xerox claims that "Absolutely nothing was mentioned in Xchanging's motion [to dismiss] about the General Obligations Law," Opp. at 33, "the statute of limitations defense need not be raised in a

-19-

pre-answer motion. Rather, under Fed. R. Civ. P. 8(c), the statute of limitations constitutes an affirmative defense, to be asserted in a responsive pleading." Furthermore, "the defense need not be articulated with any rigorous degree of specificity: 'The defense is sufficiently raised for purposes of Rule 8 by its bare assertion. Identification of the particular statute relied upon, though helpful, is not required in the pleading.'" Kulzer v. Pittsburgh-Corning Corp., 942 F.2d 122, 125 (2d Cir. 1991), quoting Santos v. Dist. Council of N.Y.C., 619 F.2d 963, 967 (2d Cir. 1980) (emphasis in Kulzer).

4.

Xerox's final argument is that "it would be inequitable for this Court to grant the remedy sought by Xchanging now, nine years later," because the APA requires the parties, if any provision of it is determined to be invalid, to "negotiate in good faith to modify this Agreement as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the Transaction is consummated as originally contemplated to the greatest extent possible." Opp. at 34; Dkt. No. 56 Exh. A1 at 67.

All that the APA requires is for the parties to negotiate in good faith in the event that it is determined that a provision in the APA is invalid. Now that it has been held invalid (see p. 9 above), the parties are encouraged to

-20-

negotiate to salvage their original contemplation to the greatest extent possible.

**CONCLUSION**

Because "there is no genuine dispute as to any material fact" and Xchanging "is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), defendants' motion for summary judgment dismissing plaintiff's amended complaint (Dkt. No. 53) is granted. The clerk will enter judgment accordingly, with each party to bear its own costs and disbursements.

So ordered.

Dated:    New York, New York
          October 19, 2016

                                    _Louis L. Stanton_
                                LOUIS L. STANTON
                                U.S.D.J.